384 A.2d 1187

**Debra Bartholomew WOLFE, Appellant,**

**v.**

**Frank BEAL, Secretary of Public Welfare of the Commonwealth of Pennsylvania and Dr. Robert Gatski, Superintendent of Danville State Hospital, Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 19, 1978.

Decided March 23, 1978.

Reargument Denied May 3, 1978.

478

Robert B. Elion, Williamsport, for appellant.

Howard M. Levinson, Deputy Atty. Gen., for appellee, Frank Beal.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

 

OPINION

LARSEN, Justice.

On November 19, 1973, appellant was committed to Danville State Hospital pursuant to Section 4405 of the Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966, Special Sess. No. 3, P.L. 96, art. IV, § 405, 50 P.S. 4405 (herein cited as "the Act") which permitted emergency involuntary detentions without a hearing for ten days. On November 21, 1973, a hearing was held in Northumberland County, Court of Common Pleas, to determine whether appellant should be detained longer than the ten days allowed by Section 4405. The court, finding appellant to be mentally ill and in need of care and treatment, committed appellant to Danville State Hospital until such time as the director of the hospital determined that care and treatment were no longer necessary. On April 15, 1974, appellant was unconditionally released from the hospital.

On June 17, 1974, appellant requested the Court of Common Pleas to (1) declare the November 21, 1973 commitment "null and void" because the commitment procedures violated appellant's rights under the due process and equal protection clauses of the United States Constitution, (2) expunge and to suppress the November 21, 1973 order of commitment and (3) destroy all hospital records which arose out of the November 21, 1973 order of commitment.

On August 7, 1974, the trial court adjudicated appellant's November 21, 1973 commitment to be in violation of her due process rights, declared such commitment "null and void" and ordered the commitment records maintained by the court expunged. As to the request for the destruction of the hospital records, the trial court, citing Section 401 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, art. IV, § 401, 17 P.S. § 211.401(a) (1977–78 Supp.) ruled that the Court of Common Pleas was without jurisdiction to entertain the matter since the hospital, as a state agency, was under the Commonwealth Court's jurisdiction.

Accordingly, appellant filed a petition with the Commonwealth Court requesting the destruction of the hospital records. The Commonwealth Court ruled[1] that since Section 4602(a) of the Act[2] required a state hospital to maintain records on all patients admitted or committed, and since there was no statute which authorized the destruction of said records, the Commonwealth Court was without authority to order the destruction of the records. Appellant appealed to this Court.

The sole question before this Court is whether a person who has been unlawfully committed to a state mental hospital has a right to the destruction of the hospital records which were created as a result of the illegal commitment. We answer in the affirmative.

The Pennsylvania Constitution specifically provides that "all men . . . have certain inherent and indefeasible rights, among which . . . [is] acquiring, possessing, and protecting . . . reputation . . ." Const. art. 1, § 1. We cannot ignore the fact that many people in our society view mental illness with disdain and apprehension. We, in *Commonwealth ex rel. Magaziner v. Magaziner*, 434 Pa. 1, 253 A.2d 263 (1975), approved of the concept of protecting the reputation of a person who was unlawfully thrust into the criminal process by sanctioning the expungement of his criminal record. We should not do less for appellant. The continued existence of the hospital records pose a threat to appellant's reputation.

Additionally, the Commonwealth Court's contention that Section 4602(a) prohibits the destruction of appellant's hospital records is erroneous. This section states that records must be kept on persons who are "admitted or commit-

---

1. *Wolfe v. Beal*, 23 Pa.Cmwlth. 475, 353 A.2d 481 (1976).

2. Section 4602(a) states in pertinent part:
   "Whenever a person is admitted or committed to any facility or receives services or benefits at a facility under any provision of this act, a complete record pertaining to such person shall be maintained by the facility . . ."

ted to any facility . . . *under any provision of this act"*. Since it has been adjudicated that appellant's November 21, 1973 commitment is null and void, appellant was never "admitted or committed to any facility . . . *under any provision of this act"*. Therefore, Section 4602(a) does not bar the destruction of the hospital records in question.

The order of the Commonwealth Court is reversed and the appellees are ordered to destroy all hospital records pertaining to appellant's commitment which occurred as a result of the November 21, 1973 order of commitment.

POMEROY, J., filed a dissenting opinion in which EAGEN, C. J., and O'BRIEN, J., joined.

POMEROY, Justice, dissenting.

The Court today seems to be saying that because a person's due process rights were infringed in a commitment proceeding, all record of that commitment must be erased, and that the courts of this state have the power to accomplish this notwithstanding legislative enactments stating that records must be maintained in all cases, while at the same time providing for protection of the confidentiality of such records. The broad sweep of the majority opinion would extend to the consequences of any due process violation, not merely commitment cases. I must respectfully dissent.

That appellant was improperly committed to Danville State Hospital by the court of common pleas is uncontested,[1] and indeed has been acknowledged by that court, which

1. The "Petition for Expungement of Confinement Records" filed in the Commonwealth Court (and which, although improper in form, was accepted by the Commonwealth Court as the equivalent of a complaint in equity or mandamus) alleges that appellant was committed after hearings of which she was not apprised and at which she neither appeared nor had representation. Since this appeal is from an order sustaining preliminary objections in the nature of a demurrer, we must accept these factual averments as true. E.g., *Allstate Ins. Co. v. Fioravanti*, 451 Pa. 108, 111, 299 A.2d 585 (1973).

directed that its own order of commitment be expunged.[2] But no court can cause the fact of that commitment to vanish into thin air; the injury to Ms. Wolfe, while regrettable, is an historical fact. Eradication of the episode itself is impossible.

Addressing the appellant's complaint which is before us, it is important to note that no present damage to appellant or particularized future harm to her good name is alleged.[3] I cannot say with any confidence that a negative public perception of those who have been in institutions such as Danville State Hospital is so deep and pervasive that we are obliged to take judicial notice of it. And it is impossible to conclude that the records pertaining to Debra Wolfe, whatever they may contain,[4] constitute a threat of irreparable harm to appellant's reputation. Indeed, appellant has not alleged that her reputation has been or may be injured in any way.

The General Assembly has explicitly directed that complete records be kept pertaining to each patient in state institutions.[5] To protect patients from any harm that could result from careless dissemination of these records, however, the legislature has coupled the directive that records be maintained with strict requirements to ensure their confidentiality. Section 111 of the Mental Health Procedure Act of 1976[6] provides in pertinent part:

2. Order of Kivko, J., August 7, 1974, attached to appellant's petition as Exhibit A.

3. The only allegation of the petition relative to harm to appellant is that continued maintenance of the records after her commitment was declared illegal "constitutes an invasion of plaintiff's right of privacy". Petition, par. 23.

4. The contents of these records are unknown to us; the record in this appeal consists only of appellant's petition, the preliminary objections thereto, and the opinions and order of the Commonwealth Court.

5. Act of October 20, 1966, Spec.Sess., P.L. 96, No. 3, art. IV, § 602, 50 P.S. § 4602 (1969).

6. Act of July 9, 1976, P.L. 817, No. 143, § 111, 50 P.S. § 7111 (Supp.1977–78).

"All documents concerning persons in treatment shall be kept confidential and, *without the person's written consent*, may not be released or their contents disclosed to anyone except:

(1) those engaged in providing treatment for the person;

(2) the county administrator . . . ;

(3) a court in the course of legal proceedings authorized by this act; and

(4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.

In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent. This shall not restrict the collection and analysis of clinical or statistical data by the department, the county administrator or the facility so long as the use and dissemination of such data does not identify individual patients." (Emphasis added.)

This is not a case where governmental action has been utterly arbitrary and the maintenance of records would serve no useful purpose. Compare *Bilick v. Dudley*, 356 F.Supp. 945 (S.D.N.Y.1973); *Hughes v. Rizzo*, 282 F.Supp. 881 (E.D.Pa.1968). Nor is this a case where potentially damaging information in government files is freely available, and a court of equity, in considering the equitable remedy of expungement, is called upon to act "with close attention to the peculiar facts of each case" and to "effect a proper reconciliation of the competing interests of the Government in retaining information . . . and of the individual in having it forgotten." *Chastain v. Kelley*, 167 U.S.App.D.C. 11, 510 F.2d 1232, 1236 (1975) (McGowan, J.). In the case before us the legislature has struck a balance and it is presumptuous for us to say that the protection it has afforded is inadequate on its face, and that additional action by the courts is necessary and proper. The statutory safeguards confirm my view that the Commonwealth

484

Court's order[7] represents the appropriate action by the judiciary in this case.

I would affirm.

EAGEN, C. J., and O'BRIEN, J., join in this dissenting opinion.

7. The Commonwealth Court's order provided:
". . . [T]he prayer of the above petition is denied. Further, the Chief Clerk is directed, in addition to the usual distribution, to send a certified copy of this opinion and order to the respondent, the Superintendent of the Danville State Hospital. Said respondent is directed to place such copy . . . with the medical file of the petitioner to that end that those limited persons, if any, ever specifically authorized by respondents to examine such medical file, shall know that the original commitment was improper and has been expunged from the court records of the Court of Common Pleas of Northumberland County which ordered the commitment."