720 A.2d 487 (1998)
P.E.S., Appellee,
v.
K.L., Appellant.
Superior Court of Pennsylvania.
Submitted November 14, 1997.
Filed October 15, 1998.
*488 K.L., appellant, pro se.
P.E.S., appellee, pro se.
Before CIRILLO, President Judge Emeritus, and SCHILLER and HOFFMAN[*], JJ.
CIRILLO, President Judge Emeritus:
K.L. appeals from an order entered in the Court of Common Pleas of Montgomery County denying his motion to expunge his docket record after the court granted his motion to dismiss a Protection from Abuse petition. We affirm in part and reverse in part.
On November 22, 1996, P.E.S. filed a "Petition for Protection from Abuse" against K.L.[1] A request for a Temporary Protection from Abuse Order was denied on the same day of filing. A hearing on the petition was scheduled for November 27, 1996, however the parties failed to appear and no action was taken on the Petition. Nonetheless, a court record was created on the petition and the case was designated as "active" in the court computer system.
On March 7, 1997, K.L. filed a "Motion to Dismiss and Expunge the Record." At a hearing, before the Honorable S. Gerald Corso, K.L. claimed the "active" case was damaging to his reputation as a custody evaluator and a guardian ad litem. K.L. currently holds the position of Director for the Child Custody Evaluation Services of Philadelphia, Inc. His specialty is in interstate child custody matters and he is a member of several professional and national organizations relating to this subject. K.L. has been appointed as guardian ad litem in several states; he has testified before several legislative bodies on child custody issues and he has given expert testimony before a number of state courts. Furthermore, he has been approved as a custody mediator by several state courts. K.L. stated his reason for expungement was to avoid continued embarrassment that the case designation might cause him as a child custody specialist.
Following the hearing, an Order was entered on March 18, 1997, granting K.L.'s Motion to Dismiss and denying the Motion to Expunge. K.L.'s "Motion for Reconsideration of Order Dated March 18, 1997" was denied by Order dated April 4, 1997. This appeal followed.
On appeal, K.L. raises the following issues for our review:[2]
(1) Did the trial court err in its opinion that there is no statutory authority for expungement of a Protection from Abuse record?
(2) Did the trial court err by not accepting other civil expungement cases as authority to expunge a Protection from Abuse record?
(3) Did the trial court abuse its discretion by denying the Appellant's inherent right to protect his reputation?
(4) Did the trial court err by not expunging the Protection from Abuse record because *489 the record was created by denial of due process?
(5) Did the trial court err by not adducing sufficient facts upon which to determine expungement as an appropriate remedy?
From the outset, we must note that the learned Judge Corso correctly dismissed P.E.S.'s petition brought under the Protection From Abuse Act (PFAA), 23 Pa.C.S.A. § 6101 et seq. Pursuant to the PFAA, once a petition is filed a hearing shall be held within 10 days. Heard v. Heard, 418 Pa.Super. 250, 614 A.2d 255 (1992). If a hearing is not held, a trial court lacks jurisdiction to grant relief to the filing party. Id. at 258, 614 A.2d at 260. Here, no hearing was held within the 10-day period of limitations. Judge Corso, therefore, correctly granted K.L.'s motion to dismiss; the trial court had no jurisdiction to grant relief. Heard, supra.
On appeal, K.L. first alleges the trial court erred in finding no statutory authority for expungement of a Protection From Abuse record. Specifically, K.L. contends expungement is included in section 6117 of the PFAA as an "Other Remedy." We disagree.
In Pennsylvania, it is well-settled that a court must construe the words of a statute according to their plain meaning. 1 Pa.C.S.A. § 1903(a); Commonwealth v. Stanley, 498 Pa. 326, 335, 446 A.2d 583, 587 (1982); Fireman's Fund Ins. Co. v. Nationwide Mutual Ins. Co., 317 Pa.Super. 497, 502, 464 A.2d 431, 434 (1983). When the words of a statute are unambiguous, they are not to be disregarded under the pretext of pursuing the spirit of the statute. 1 Pa.C.S.A. § 1921(a); Heard, supra. Therefore, we must examine whether this issue may be resolved by reference to the express language of the PFAA.
The current version of the PFAA bears no mention of expungement procedures. K.L. contends expungement is included in section 6117 of the PFAA entitled "Procedure and other remedies." 23 Pa.C.S.A. § 6117. Section 6117 states: "Unless otherwise indicated in this chapter, a proceeding under this chapter shall be in accordance with applicable general rules and shall be in addition to any other available civil or criminal remedies." 23 Pa.C.S.A § 6117. We fail to see how section 6117's "other remedies" apply to the present situation. In Cipolla v. Cipolla, 264 Pa.Super. 53, 398 A.2d 1053 (1979), our court summarized the purpose of the PFAA as follows:
The Protection From Abuse Act is a vanguard measure dealing with the problems of wife and child abuse. It is designed to protect against abuse not only between family or household members who reside together, but also between unmarried persons living together. To institute an action, the plaintiff must file a petition with the court alleging abuse by the defendant. If emergency relief is needed, the court may enter a temporary, ex parte order to protect the plaintiff or minor children from abuse. In any event, a hearing must be held within ten days at which time plaintiff must prove the charges. The court is empowered to grant broad relief to bring about a cessation of abuse: an order directing defendant to refrain from abusing plaintiff or the children; evicting defendant from the residence and granting possession to plaintiff; awarding temporary custody of and/or establishing temporary visitation rights with regard to children; and directing defendant to pay support. Any such order entered shall have no effect beyond one year. District Justices are authorized to grant relief during weekend hours. Defendant may be held in indirect criminal contempt for violating the order and may be imprisoned up to six months or be fined $ 1,000.00 or both. An arrest for violation of the order may be made without a warrant even if the violation is not committed in the presence of the officer.
Cipolla, 264 Pa.Super. at 55 n. 1, 398 A.2d at 1054 n. 1 (1979) (citations omitted). Given the nature and construction of the PFAA, we read section 6117 as it pertains to a petitioner and the remedies available to that person seeking protection. We do not read section 6117 so broad as to include the remedy of expungement for a respondent.
K.L. next alleges the trial court erred by not accepting other civil expungement cases as authority to expunge a PFAA record. *490 K.L. also contends, in his third issue, that the trial court abused its discretion by denying K.L. an adequate opportunity to defend and protect his reputation. We find that the trial court did not err as a matter of law by not accepting other civil cases as authority for expungement.[3] We also find the trial court did not abuse its discretion in the expungement proceedings; K.L. was given an adequate opportunity to defend and protect his reputation.[4] We are, however, persuaded by K.L.'s plea to extend the concept of expungement to the PFAA in limited circumstances where a respondent seeks to protect his or her reputation.
As authority for his argument, K.L. cites to Wolfe v. Beal, 477 Pa. 477, 384 A.2d 1187 (1978), and Commonwealth v. J.T., 279 Pa.Super. 127, 420 A.2d 1064 (1980). In Wolfe, our supreme court concluded that a person who was unlawfully committed to a state psychiatric hospital has a right to the destruction of hospital records that were created as a result of the illegal commitment. The court stated:
The Pennsylvania Constitution specifically provides that "all men ... have certain inherent and indefeasible rights, among which ... [is] acquiring, possessing, and protecting ... reputation ..." Const. art. 1, s 1. We cannot ignore the fact that many people in our society view mental illness with disdain and apprehension. We, in Commonwealth ex rel. Magaziner v. Magaziner, 434 Pa. 1, 253 A.2d 263 (1975[1969]), approved of the concept of protecting the reputation of a person who was unlawfully thrust into the criminal process by sanctioning the expungement of his criminal record. We should not do less for appellant. The continued existence of the hospital records pose a threat to appellant's reputation.
Wolfe, 477 Pa. 477, 480, 384 A.2d 1187, 1189 (1978) (emphasis added). The court found that the appellant in Wolfe was entitled to a clean and unsullied record and ordered the expungement of all records pertaining to the commitment. Id.
Similarly, in J.T., our court ordered that court records of psychiatric commitment should be expunged after the trial court concluded that its prior commitment order was null and void as having not been entered in compliance with the Due Process Clause of the United States Constitution and the Mental Health and Mental Retardation Act of 1966, 50 P.S. § 4406 (since repealed). J.T., 279 Pa.Super. 127, 420 A.2d 1064 (1980). In *491 J.T., the court specifically addressed the issue of court records:
To be sure, the question of expungement of court records arising from an illegal commitment was not at issue in Wolfe simply because the lower court's decision to order such relief was not challenged. However we think it clear that the Court's reasoning regarding destruction of the hospital records is equally applicable to the issue sub judice. Be they hospital records or court records, the dispositive fact is that they originated as a result of an illegal proceeding subsequently declared null and void; and, in either case, their "continued existence ... pose a threat to appellant's reputation." Id. Under such circumstances, and in the absence of any compelling reason to the contrary offered by the Commonwealth, justice demands that appellant be returned to a position as near as possible as that which she enjoyed prior to the illegal commitment; namely, an unsullied record. See Bilick v. Dudley, 356 F.Supp. 945 (S.D.N.Y.1973); United States v. McLeod, 385 F.2d 734 (5th Cir.1967).
J.T., 279 Pa.Super. 127, 129-30, 420 A.2d 1064, 1065-66 (1980) (emphasis added).
We draw an analogy between the circumstances of Wolfe and J.T. and the present case. For whatever reason, after P.E.S.'s petition was filed, no action was taken. Unfortunately in this case, a court record was created with K.L.'s name appearing therein. K.L. vehemently claims this record is damaging to his reputation as a specialist in interstate child custody. We agree. The court record is available to anyone who inquires at the Montgomery County Court House or other such locations with like computer facilities. As a specialist in child custody matters, this entry could have serious repercussions upon K.L.'s reputation and livelihood. Should he ever be called upon as an expert witness, this entry could seriously affect his credibility.
Much like psychiatric commitments, abuse actions are not taken lightly in our Commonwealth, even when such petitions are dismissed. Commonwealth v. Majeed, 548 Pa. 48, 56, n. 6, 694 A.2d 336, 340 n. 6 (1997) ("A violation of a PFA [order] is a violation of the law, a public wrong, punishable by a fine, imprisonment, or both."). See also 23 Pa.C.S.A. § 6114; Commonwealth v. Aikins, 422 Pa.Super. 15, 618 A.2d 992 (1993) (Beck, J., dissenting). From this record, a guilty inference is too easily reached. We find no compelling reasons to allow this dismissed petition record to stand. As in J.T., justice demands that K.L. be returned to a position as near as possible as that which he enjoyed prior to the filing of the petition, namely, an unsullied record. See J.T., supra. K.L. must be afforded the right to protect his reputation as guaranteed by our State Constitution. See Wolfe, supra. The continued existence of the court records pose a significant threat to K.L.'s reputation. Id. As such, we find that K.L. is entitled to the remedy of expungement in this instance. Id.
Additionally, were we to allow K.L.'s record to stand, such a result would be fraught with peril. The PFAA would instantly be converted into a legitimate opportunity for blackmail. A petitioner could threaten any partner or former intimate partner by filing a petition and then fail to follow up on the petition, knowing that in doing so, a court record would be kept as a sort of behavioral "check." To allow such a result would completely thwart the underlying goals of the PFAA  namely, to protect spouses, intimate partners, and children from imminent physical abuse. Cipolla, supra.
We are further persuaded by a similar situation cited by K.L. under the Child Protective Services Law (CPSL), 23 Pa.C.S.A. § 6301 et seq. Under the CPSL, the Legislature has mandated that should a report of child abuse yield no determination within 60 days, the report shall be considered an unfounded report, and all information identifying the subjects of the report shall be expunged within 12 months. 23 Pa.C.S.A. § 6337(b). A parallel may be drawn in the present case. As we have noted, after P.E.S.'s petition was filed, no action was taken, yet the record remained in the court computers. Under the PFAA, once the 10-day period of limitations passes within which to hold an abuse hearing, the trial court lacks jurisdiction to grant relief to a filing party. Heard, supra. This situation is similar to a child abuse report that yields no determination *492 within 60 days. We find this example persuasive in reaching the conclusion that the underlying facts of this case warrant the expungement of K.L.'s PFAA and all court related records where no facts were brought forth to substantiate a finding of abuse.
This court is also persuaded by a parallel situation derived from the statutory criminal process of expungement in 18 Pa.C.S.A. § 9122. Section 9122(a) states:
(a) Specific proceedings.-Criminal history record information shall be expunged in a specific criminal proceeding when:
(1) no disposition has been received or, upon request for criminal history information, no disposition has been recorded in the repository within 18 months after the date of arrest and the court of proper jurisdiction certifies to the director of the repository that no disposition is available and no action is pending.
18 Pa.C.S.A. § 9122(a)(1).
Under this statute, if an individual is arrested, and, for whatever reason, no further action is taken within 18 months, the criminal history record information shall be expunged. 18 Pa.C.S.A. § 9122(a)(1) (emphasis added). Similarly, once P.E.S.'s petition was filed, no action was taken within the 10-day period required by the PFAA. At this point in time, it was clear no disposition was available for the case, save for the granting of a dismissal. Heard, supra. Because of this fact, the rationale of section 9122 applies; once it was clear that no disposition of P.E.S.'s PFAA petition was possible, K.L. was entitled to expungement of his record.
This court also finds instructive the factors a court must consider regarding the expungement process of a criminal arrest record. When faced with a request for expungement of an arrest record, a court must balance the individual's right to be free from the harm attendant to maintenance of the arrest record against the Commonwealth's interest in preserving such records. Commonwealth v. Butler, 448 Pa.Super. 582, 672 A.2d 806 (1996). Although K.L.'s record here is not an arrest record, it, nonetheless, carries with it the potential stigmas associated with such a record. The negative social connotations that attach to the PFAA are too great to allow K.L.'s record to remain intact. In comparison, P.E.S. puts forth no reasons in her brief as to why such a record should be maintained. At the dismissal hearing, P.E.S. stated that she opposed expungement of the record and wanted to keep the entry as a "check" on K.L. This is exactly the type of situation this court seeks to avoid in the present holding. The PFAA is not to be used as a manipulative tool. Accordingly, we find K.L.'s situation warrants the expungement of his record due to the potential harm it may cause to his reputation and livelihood as a child custody specialist as well as P.E.S.'s complete failure to pursue her abuse petition.
For the foregoing reasons, we hereby order that all documents and computer files identifying this matter involving K.L. be expunged. Because of the present holding, we need not address K.L.'s final claims on appeal.
Order affirmed in part and reversed in part. Jurisdiction relinquished.
NOTES
[*] HOFFMAN, J. did not participate in the consideration of this decision.
[1] In this petition, P.E.S. alleged the following:

Defendant has been stalking me; appearing at and calling my place of work as recent as 11/21/96  just watches, then leaves  leaves phone messages if I cannot answer the phone  has started calling my friends as well as my estranged husband.
Defendant has "couched" these conversations under the pretext of trying to collect money owed to him  there is currently a voluntary wage attachment in place.
Please note Defendant has been advised that if this `stalking' continued I would request a protection Order. This has been occurring for quite some time now and Defendant was advised of this several times. I did meet w/ Defendant to try and resolve matters recently, but it did not work out.
[2] Although K.L. only raised three issues in his Concise Statement of Matter Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), we allow K.L. to present all five since they essentially overlap in subject matter. We note that this defect could be considered a waiver of his claims. Pa.R.A.P. 1925(b), 42 Pa.C.S.A. As our ability to meaningfully review the claims is not hampered by the omission, however, we will review all five claims. See Commonwealth v. Silver, 499 Pa. 228, 452 A.2d 1328 (1982). We also rearrange the claims for clarity of our analysis.
[3] K.L. cites to Wolfe v. Beal, 477 Pa. 477, 384 A.2d 1187 (1978), and Commonwealth v. J.T., 279 Pa.Super. 127, 420 A.2d 1064 (1980) to support the argument that the trial court should have accepted these cases as authority to expunge his PFAA record. We conclude the trial court did not err as a matter of law in not accepting these cases as authority to expunge his PFAA record. Judge Corso was in no way bound to accept these cases as authority as they do not specifically relate to the PFAA. We do, however, find these cases to be persuasive authority to support the result we reach today.
[4] An abuse of discretion requires a showing of manifest unreasonableness, partiality, ill-will, or such lack of support as to be clearly erroneous. Paden v. Baker Concrete Construction, Inc., 540 Pa. 409, 412, 658 A.2d 341, 343 (1995). Absent this finding, the trial court's ruling will not be overturned. On appeal, K.L. claims he was not given a full opportunity to defend his reputation. We disagree. As the trial court aptly noted, K.L. was provided an adequate opportunity to present the bases of his motion for expungement. Succinctly, K.L. stated his reason for seeking expungement was to avoid continued embarrassment, since the case was listed as "active" in the court computer, and to protect his reputation as a custody evaluator and a guardian ad litem for various court systems. When asked by the trial court for authority to grant the expungement, K.L. replied that he had researched the topic, that there were no reviewed cases on point, that expungement is usually reserved for criminal cases, and that it is a discretionary remedy.

On appeal K.L. contends the trial court limited the testimony to the bounds of the hearing on the motion to dismiss and expunge. This is correct; the trial court would not have had jurisdiction to hear the merits of the petition after the 10-day period of limitations had passed. Heard, supra; 23 Pa.C.S.A. § 6101. K.L. claims that by limiting the hearing he was never given a chance to dispute the merits of the petition. While we agree with this contention, we fail to see the effect this determination would have upon the present case. Because neither party appeared at the original scheduled hearing, no action was taken on the petition. K.L. alleged at the dismissal proceeding that the case was listed as "active" and this was embarrassing to his reputation. The trial court noted it did not believe it had the authority to expunge the PFAA record. This is the issue we seek to address on appeal.