798 A.2d 186

**Maura CARLACCI, Appellee,**

**v.**

**Edward R. MAZALESKI, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 2000.

Decided May 31, 2002.

472

James T. McHale, for appellant.

Andrew Phillips, for appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

## OPINION

Chief Justice ZAPPALA.

We granted allocatur in this case to determine whether the Superior Court properly affirmed the Lackawanna County Common Pleas Court's order denying expungement of a Protection From Abuse Act[1] (PFAA) proceeding. For the reasons that follow, we reverse.

On October 6, 1998, Appellee, Maura Carlacci, filed a PFAA petition[2] against Appellant, Edward R. Mazaleski. Appellee and Appellant are not married, but are the parents of a minor child. The Court of Common Pleas of Lackawanna County entered a temporary PFAA order *ex parte* that same date and scheduled a hearing for October 15, 1998. On October 15th, Appellant was awarded partial custody of the minor child and the parties agreed to continue the PFAA matter until November 16, 1998. On November 16th, the parties executed a stipulation that the temporary PFAA order should be declared null and void, *ab initio*,[3] which was adopted as an "Order of Court."[4]

1. Act of December 19, 1990, P.L. 1240, No. 206, § 2, *as amended*, 23 Pa.C.S. §§ 6101–6118.

2. To institute an action under the PFAA, a plaintiff must file a petition with the court alleging abuse by the defendant. 23 Pa.C.S. § 6106. If a plaintiff petitions for a temporary order for protection from abuse and alleges immediate and present danger of abuse to the plaintiff or minor children, the court is authorized to conduct an *ex parte* proceeding and enter such temporary order as it deems necessary to protect the plaintiff or minor children. *Id.* § 6107(b). A hearing must be held within ten days of the filing of the petition, at which time the plaintiff must prove the allegation of abuse by a preponderance of the evidence. *Id.* § 6107(a). The court is empowered to grant broad relief to effectuate cessation of the abuse. *See id.* § 6108(a). Any such order entered shall have no effect beyond eighteen months, *id.* § 6108(d), but may be extended after a hearing, *id.* § 6108(e).

3. *Ab initio* is defined as: "From the beginning; from the first act; from the inception." BLACK'S LAW DICTIONARY 6 (6th ed.1991).

4. The common pleas court's order stated: "[T]he attached Stipulation is adopted as an Order of Court which declares the Temporary Order for Protection from Abuse null and void, *ab initio*. The Petition for

On November 19, 1998, Appellant filed a motion to expunge the docket related to the PFAA petition. On December 24, 1998, the common pleas court denied Appellant's motion. On December 30, 1999, the Superior Court affirmed in an unpublished memorandum. Appellant's subsequent Application for Reargument was denied by order of the Superior Court dated March 10, 2000.

In this Commonwealth, there exists the right to petition for expungement of a criminal arrest record. *See e.g., Commonwealth v. Armstrong,* 495 Pa. 506, 434 A.2d 1205, 1206 (1981). This right is an adjunct of due process and is not dependent upon express statutory authority. *Id.; see also Commonwealth v. Rose,* 263 Pa.Super. 349, 397 A.2d 1243 (1979). "In determining whether justice requires expungement, the Court, in each particular case, must balance the individual's right to be free from the harm attendant to the maintenance of the arrest record against the Commonwealth's interest in preserving such records." *Commonwealth v. Wexler,* 494 Pa. 325, 431 A.2d 877, 879 (1981). The factors that must be considered in making such a determination include, but are not limited to:

> [T]he strength of the Commonwealth's case against the petitioner, the reasons the Commonwealth gives for wishing to retain the records, the petitioner's age, criminal record, and employment history, the length of time that has elapsed between the arrest and the petition to expunge, and the specific adverse consequences the petitioner may endure should expunction be denied.

*Id.* (quoting *Commonwealth v. Iacino,* 270 Pa.Super. 350, 411 A.2d 754, 759 (1979) (Spaeth, J., concurring)).

Although this Court has never addressed an expungement in the context of the PFAA, the Superior Court did so in *P.E.S. v. K.L.,* 720 A.2d 487 (Pa.Super.1998). There, a PFAA petition had been filed by the appellant against the appellee, requesting the issuance of a temporary PFAA order. The

Protection from Abuse is therefore dismissed and the charges against the Defendant are hereby dropped." November 16, 1988 Order of the Court of Common Pleas of Lackawanna County, Family Court, docketed at No. 98–CV–4771.

petition was denied and a hearing on the petition was scheduled; the parties, however, failed to appear and no action was taken on the petition. The appellee thereafter filed a "Motion to Dismiss and Expunge the Record." The common pleas court granted the motion to dismiss, but denied the motion to expunge based on its determination that there was no statutory authority for expungement of a PFAA record.

On appeal, the Superior Court reversed. After conceding that the PFAA did not specifically authorize expungement of a PFAA record, the Superior Court stated that it was "extend[ing] the concept of expungement to the PFAA in limited circumstances where a [petitioner] seeks to protect his or her reputation." *P.E.S.*, 720 A.2d at 490. The Superior Court analogized the appellee's request to expunge the record of the dismissed PFAA petition to a request to expunge court records of an illegal commitment to a state psychiatric hospital pursuant to this Court's decision in *Wolfe v. Beal*, 477 Pa. 477, 384 A.2d 1187 (1978) (holding that a person who has been unlawfully committed to a state psychiatric hospital has a right, arising out of the right to protect one's reputation guaranteed by Article I, Section 1 of the Pennsylvania Constitution, to the destruction of the hospital records which were created as a result of the illegal commitment); *accord Commonwealth v. J.T.*, 279 Pa.Super. 127, 420 A.2d 1064 (1980) (applying *Wolfe* to the expungement of court records of a psychiatric commitment order determined to be null and void for having not been entered in compliance with the Due Process Clause of the United States Constitution and the Mental Health and Mental Retardation Act of 1966, 50 P.S. § 4406 (repealed in part 1976)).[5] Accordingly, the Superior

---

**5.** The Superior Court also cautioned in *P.E.S.* that,

> were we to allow [the record of the dismissed PFAA petition] to stand, such a result would be fraught with peril. The PFAA would instantly be converted into a legitimate opportunity for blackmail. A petitioner could threaten any partner or former intimate partner by filing a petition and then fail[ing] to follow up on the petition, knowing that in doing so, a court record would be kept as a sort of behavioral "check." To allow such a result would completely thwart the underlying goals of the PFAA—namely, to protect spouses, intimate partners, and children from imminent physical abuse.

Court ordered that the record of the dismissed PFAA petition be expunged. The Superior Court also went on to hold in *P.E.S.* that in ruling on a petition to expunge a PFAA record, the trial court must utilize the *Wexler* balancing test.

On appeal to this Court, Appellant argues that the Superior Court's decision in the instant case is inconsistent with its previous decision in *P.E.S.* and violates Appellant's right to protect his reputation, guaranteed by Article I, Section 1 of the Pennsylvania Constitution.[6] Appellee counters that there is no statutory authority for expungement of PFAA records, thus arguing by implication that the Superior Court overstepped its authority in *P.E.S.* by sanctioning the right to petition for expungement of PFAA records. Appellee goes on to argue in the alternative, that if a right to petition for expungement of PFAA records exists, the Superior Court properly distinguished *P.E.S.* from the instant case.

■ We will first address Appellee's contention that expungement of PFAA records is prohibited because there is no statutory authority for the same. Appellee essentially argues that this matter is controlled by the maxim *expressio unius es exclusio alterius.*[7] Appellee asserts that since the legislature has provided standards and procedures for expungement of records in criminal, juvenile and child abuse matters, the legislature's failure to provide standards and procedures for expungement of PFAA records evinces the legislature's intention to prohibit such.

In *P.E.S.*, the Superior Court relied heavily on this Court's decision in *Wolfe*, wherein we stated:

720   A.2d at 491.

6. "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. I, § 1.

7. *Expressio unius es exclusio alterius* is defined as: "A maxim of statutory interpretation meaning that the expression of one thing is the exclusion of another." BLACK'S LAW DICTIONARY 581 (6th ed.1991).

The Pennsylvania Constitution specifically provides that "all men ... have certain inherent and indefeasible rights, among which ... [is] acquiring, possessing, and protecting ... reputation ..." Const. art. 1, § 1. We cannot ignore the fact that many people in our society view mental illness with disdain and apprehension. We, in *Commonwealth ex rel. Magaziner v. Magaziner,* 434 Pa. 1, 253 A.2d 263 (1969), approved of the concept of protecting the reputation of a person who was unlawfully thrust into the criminal process by sanctioning the expungement of his criminal record. We should do no less for appellant. The continued existence of the hospital records pose a threat to appellant's reputation.

384 A.2d at 1189. Comparing psychiatric commitments to PFAA actions, the Superior Court stated in *P.E.S.:*

Much like psychiatric commitments, abuse actions are not taken lightly in our Commonwealth, even when such petitions are dismissed. *Commonwealth v. Majeed,* 548 Pa. 48, 56 n. 6, 694 A.2d 336, 340 n. 6 (1997) ("A violation of a [PFAA order] is a violation of the law, a public wrong, punishable by fine, imprisonment, or both.") See also 23 Pa.C.S.A. § 6114; *Commonwealth v. Aikins,* 422 Pa.Super. 15, 618 A.2d 992 (1993) (Beck, J., dissenting).

720 A.2d at 491. Furthermore, as Appellant points out, another consequence of maintenance of a PFAA docket record is the possibility that it can be considered by a trial court in any subsequent PFAA proceeding, under 23 Pa.C.S. § 6107(a).[8]

■ We find the Superior Court's reasoning in *P.E.S.* persuasive and therefore expressly adopt its holding, that there exists a right to petition for expungement of a PFAA record where the petitioner seeks to protect his reputation. This right is an adjunct of due process and Article I, Section 1 of the Pennsylvania Constitution and is not dependent upon

8. That section provides in pertinent part: "The court shall, at the time the defendant is given notice of the hearing [on the PFAA petition], advise the defendant of the right to be represented by counsel, *and of the fact that any protection order granted by a court may be considered in any subsequent proceedings under this title."* 23 Pa.C.S. § 6107(a) (emphasis added).

express statutory authority. This matter is thus not controlled by the maxim *expressio unius es exclusio alterius*, but instead, by the maxim *ubi jus, ibi remedium.*[9]

■ Having established that there is a right to petition for expungement of PFAA records, we now turn to Appellant's claims. The Superior Court distinguished its decision in *P.E.S.* from the instant case as follows:

Here, unlike in *P.E.S.* (where no action, be it temporary or final, occurred), action was taken in the form of a temporary [PFAA order], which remained in effect and was continued for forty-one (41) days before becoming the object of the parties' stipulation order. Further, the temporary [PFAA order] was not the product of illegal activity nor the focus of the appellant's objection either during or after the October 15, 1998 "final order of court", which provided the appellant with partial custody of the parties' minor-child and *continued the temporary* [PFAA order] *until November 16, 1988.* Such factors distinguish *P.E.S.* from the case *sub judice.* In addition, had the appellant violated the temporary [PFAA order] during its 41–day existence, he would have been subject to arrest on the charge of indirect criminal contempt punishable by a fine up to $1,000 and/or a jail sentence of up to six months. Consequently, we hold that the unique facts of this case warrant the affirmance of the order denying the appellant's "Motion to Expunge", even though the [PFAA order] was the object of a stipulation to dismiss between the parties because *the matter went beyond the temporary PFA stage.*

Superior Court memorandum at 5–6 (emphasis in original).

Appellant contends that this is an insufficient basis on which to distinguish *P.E.S.* from the instant case. We agree. That no temporary PFAA order was entered in *P.E.S.* is of no moment. In both cases, the PFAA proceedings were discontinued before a hearing at which the plaintiff in each case would have had to meet the burden of proving by a preponder-

---

9. *Ubi jus, ibi remedium* is defined as: "Where there is a right, there is a remedy." BLACK'S LAW DICTIONARY 1520 (6th ed. 1991).

ance of the evidence that the allegation of abuse contained in the PFAA petitions had occurred. As aptly stated by President Judge Emeritus Cercone in his dissenting memorandum:

> Despite the passage of time, the [PFAA] proceedings never legally evolved beyond the temporary order stage as the Trial Court merely continued the original temporary order which was issued *ex parte*. The Trial Court did not issue a permanent order or make any ... findings of fact that incidents of abuse had occurred. The only evidence of abuse which existed of record when the Trial Court continued the temporary order was the Appellee's bald allegations of prior alleged acts of abuse that were contained in her petition, nothing more.

Superior Court dissenting memorandum at 3.

■ We find the facts of *P.E.S.* and the instant case analogous to those presented in *Commonwealth v. D.M.*, 548 Pa. 131, 695 A.2d 770 (1997). In *D.M.*, this Court held that when a defendant has been tried and acquitted of a criminal offense, he is entitled to expunction of the arrest record as a matter of law, and that the *Wexler* balancing test is unnecessary and inappropriate. Just as we found it "improper to go behind a verdict of acquittal and purport to assess the strength of the prosecution's case" in attempting to apply the first factor of the *Wexler* balancing test in a criminal expungement matter, *see D.M.*, 695 A.2d at 772, it is equally improper to assess the strength of a PFAA petition that has since been dismissed by court order before the plaintiff even attempted to meet its burden of proving the allegation of abuse contained in the PFAA petition, in attempting to apply the *Wexler* balancing test in a PFAA expungement matter. We therefore hold that the *Wexler* balancing is unnecessary when: (1) a PFAA petition filed against a PFAA defendant has been dismissed by court order, as in *P.E.S.*; or (2) the PFAA proceedings never evolve beyond the temporary order stage, as in the instant case.[10]

10. The dissenters would not automatically grant the remedy of expungement in every case in which the proceedings did not evolve beyond the temporary order stage; but rather, remand for a hearing on

Accordingly, the order of the Superior Court affirming the order of the Court of Common Pleas of Lackawanna County is reversed and the case is remanded to the common pleas court with instructions to enter an order expunging the docket related to the PFAA petition filed against Appellant.

Former Chief Justice FLAHERTY did not participate in the decision of this case.

Justice NEWMAN files a dissenting opinion.

Justice SAYLOR files a dissenting opinion in which Justice NEWMAN joins.

Justice NEWMAN, dissenting.

I agree with the dissenting opinion of Mr. Justice Saylor. I write separately to note my disagreement with the majority's resolution of this matter, which has the effect of creating a per se rule granting expungement in Protection From Abuse Act cases where the proceedings do not evolve beyond the temporary order stage. While employing a per se rule may save judicial resources, I do not believe that it serves the interests of the citizens of the Commonwealth to eliminate the exercise of judicial discretion from the expungement process. Therefore, I believe that the balancing test set forth in *Commonwealth v. Wexler*, 494 Pa. 325, 431 A.2d 877, 879 (1981) should apply in the instant matter. Accordingly, I dissent.

Justice SAYLOR, dissenting.

I agree with the majority that, despite the absence of statutory authorization, there exists a right to petition for expungement of a PFAA record which derives from considerations of due process and the protection of reputation guaran-

the expungement petition. We view such a procedure as a waste of limited judicial resources. Moreover, under the circumstances of the instant case, the common pleas court has already entered an "Order of Court" specifically stating that the temporary *ex parte* PFAA order entered in this case was "null and void, *ab initio*." *See supra* note 4, at 2. It is clearly unnecessary to remand for a hearing on the merits of a matter which the lower court has already declared null and void from its inception.

teed by Article I, Section 1 of the Pennsylvania Constitution. I do not agree, however, that the remedy of expungement should automatically be afforded in every case in which the proceedings did not evolve beyond the temporary order stage. Rather, particularly given the seriousness with which the legislature views protection from domestic violence, I believe that petitions for expungement in this context should be decided, following a hearing, by a balancing of factors analogous to those enunciated in *Commonwealth v. Wexler*, 494 Pa. 325, 330, 431 A.2d 877, 879 (1981). Accordingly, as I would reverse the order of the Superior Court but remand for a hearing on Appellant's petition, I respectfully dissent.

Justice NEWMAN joins this dissenting opinion.